**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**

| | |
|---|---|
| **CHASE MALONE, individually and as the assignee of certain rights of Kareem Boynes;** | **Case No.: ST 2022-cv-00057** |
| **Plaintiff,** | **Super. Ct. Case No. ST-22-CV-269** |
| **v.** | **ACTION FOR DECLARATORY RELIEF, BREACH OF CONTRACT, BAD FAITH AND PUNITIVE DAMAGES** |
| **INDEMNITY INSURANCE COMPANY OF NORTH AMERICA a/k/a "CHUBB";** | |
| **Defendant.** | **JURY TRIAL DEMANDED** |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL**
**SUMMARY JUDGMENT ON COUNTS I AND III AGAINST CHUBB**

The Plaintiff moves for partial summary judgment pursuant to Rule 56 on Counts I and

III of the Amended Complaint against Chubb. One preliminary comment is in order.

As noted in *Royal Ins. Co. of Am. v. KSI Trading Corp.*, 563 F.3d 68, 73 (3d Cir.

2009),"maritime contracts are governed by federal admiralty law when there is an established

federal rule, but absent such a rule, state law applies." However, the outcome in this case would

not be different under either law. In this regard, as the U.S. Supreme Court held *CITGO Asphalt*

*Ref. Co. v. Frescati Shipping Co., Ltd.*, 140 S. Ct. 1081, 1087–88, 206 L. Ed. 2d 391 (2020):

> Maritime contracts "must be construed like any other contracts: by their terms and consistent with the intent of the parties." " 'Where the words of a contract in writing are clear and unambiguous, its meaning is to be ascertained in accordance with its plainly expressed intent.' " In such circumstances, the parties' intent "can be determined from the face of the agreement" and "the language that they used to memorialize [that] agreement." (Citations omitted).

This standard is no different than the law of the Virgin Islands. *See, Guardian Ins., Inc v.*

*Rahhal*, 63 V.I. 420, 423 (Super Ct. 2015). In short, contract interpretation under federal or

local law is straight forward and well-known.

**I.    Summary Judgment Standard**

A movant is entitled to summary judgment when they "show that there is no genuine

dispute as to any material fact." Fed. R. Civ. P. 56(a). A factual dispute is "genuine" only if the

1

"evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial

burden of proving that there is no genuine dispute as to any material fact. *Celotex Corp. v.*

*Catrett*, 477 U.S. 317,323 (1986). However, when it has met that burden, the non-movant "must

do more than simply show that there is some metaphysical doubt as to the material facts."

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In assessing whether a non-movant has met their burden only those facts about which

there is a "genuine" dispute must be viewed in the light most favorable to the non-moving

party. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## II.    STATEMENT OF FACTS

These facts support this motion for partial summary judgment, as set forth in the Rule

56.1 filing with this motion, which has the references in the record that support these facts:

1. Chase Malone is a cancer survivor, having survived a rare form of cancer, Hodgkin's Lymphoma, at 21 years of age after a long struggle. His first trip after his recovery was to St. John, but he was seriously injured when a boat he was on hit a wave, throwing him into the air and then onto the deck, breaking his back. As a result, he had surgery a few days later, fusing several vertebrae in his spine. **Ex 1 (Holt Declaration).**

2. Malone sued the captain of the boat, Kareem Boynes, and his employer, Island Time, for damages caused by Boynes' negligence on April 17, 2021, which alleged *inter alia* that Boynes was acting within the scope of his employment at all times. **Ex 1.**

3. Island Time's lawyer, Adam Marinelli produced an insurance policy on July 13, 2021, that provided coverage for this maritime claim, issued by Chubb, identified as Policy N10694486. **Ex 2.**

4. Policy 486 also had an Endorsement #19 that required a licensed Coast Guard Captain to be operating the insured boats in order for there to be coverage. See **Exhibit 2**.

5. After being questioned about this policy by Malone's counsel, Attorney Marinelli sent an email on July 27, 2021, stating:

   > Following up on our discussion and prior emails, you were correct – we sent the wrong policy. Sorry about that. I've requested the full policy docs from the client, but here are the cert pages for the proper one.

   The email attached certificate of insurance that show that R.A. Belter Insurance Agency procured multiple policies covering Island Time, including two policies that are issue

in this matter, Marine General Liability Policy N10694486 and Protection and Indemnity Policy N10694528. **Ex 3**.[1]

6. Attorney Marinelli subsequently produced the promised second insurance policy that covered this maritime claim on July 27, 2021, Policy 528, issued by Chubb to Red Hospitality, which had an Endorsement #20, naming Island Time as an additional Insured. See **Ex 1.**

7. This second policy, 528, expressly included Island Time's employees, like Kareen Boynes, as Named Insured while working in the scope of their employment. See highlighted section on pages 12-13 of **Ex 4.**

8. Chubb retained the law office of Hamilton Miller & Birthisel ("HMB") to represent Boynes and Island Time, who filed an answer on September 15, 2021. **Ex 1.**

9. On August 12, 2021, Chubb's primary adjuster assigned to the claim issued a "claim alert" after reviewing the Complaint, as the damages alleged in the complaint could exceed Chubb's policy limits. **Ex. 5** at 21-22.

10. On September 21, 2021, HMB filed a Rule 26 Disclosure for Island Time and Boynes, stating that there was insurance that covered this claim which would be produced upon request. **Ex 1**.

11. Malone's counsel followed up and asked for a copy of all insurance policies that might provide coverage, as well as any Reservation of Rights ("ROR") letters sent by Chubb, which defendants are required to voluntarily produce pursuant to F.R. Civ. P. 26 (a)(1)(A)(iv) and LRCi 26.2 (c). **Ex 1**.[2]

12. In discovery, Chubb disclosed that it asked one of its maritime adjusters, Jonathan Nieves, to determine if Policy 486 provided coverage for this claim for Boynes, which he confirmed on September 16, 2021. **Ex 6**.

13. On January 4, 2022, Doniger finally responded by email to Malone's counsel repeated requests for insurance confirmation, stating that he had been speaking to Chubb regularly, but the policies were a bit to go through, although he attached several documents, including the same certificate of insurance attached as **Ex 3**, listing both Policy 486 and Policy 528. **Ex 7**.

14. In discovery, Chubb produced a redacted email chain that showed that Doniger had at least 10 email exchanges between December 7, 2021, and January 7, 2022, with Chubb's adjusters and Chubb's in-house counsel regarding coverage under policy 468, asking Vacek on December 8, 2021, for a copy of the ROR to send to Boynes, which Vacek said he would check to see if one went out. **Ex. 8.**

15. However, Chubb never sent an ROR to Boynes at any time. **Ex 1.**

---

[1] For the sake of clarity, these two policies will hereinafter be referred to as "486" and "528".

[2] As will be discussed, *infra,* Reservation of Rights letters (ROR) are letters sent by insurance companies when they decide to defend an insured, but are not certain there is coverage, so the insurer puts the insured on notice that it may deny coverage at a later date, but will provide a defense for the claim now.

16. Chubb subsequently retained Andrew Simpson to substitute as counsel for Boynes, who entered an appearance on January 11, 2022. **Ex 1**.

17. The scheduling order was amended on January 24, 2022, setting forth a new fact discovery deadline of May 15, with mediation to follow thereafter. **Ex 1**.

18. In its discovery responses, Chubb stated under oath that its adjusters and in-house attorneys had completed its reassessment of coverage, including speaking with Nieves and the underwriter who issued the policy, Carrie Garrison, by February 7th, 2021, concluding that policy 486 did not cover Boynes, but that it did not send an ROR to Boynes as they did not know how to contact him. **Ex 9.**

19. However, on February 7, 2022, Simpson emailed Carey noting that he had spoken with Boynes, stating (**Ex. 10**):

> **FYI, I was finally able to get through to Mr.. Boynes after tracking down a new email address for him"** (Emphasis added).

20. Carey testified that in fact he had no trouble reaching Boynes once he needed to send him the completed denial of coverage letter. **Ex. 11** at 51-52. As Vacek noted, Island Time would always have Boynes' contact information. **Ex 5** at 42.

21. On May 15, 2022, the fact discovery deadline expired, with Simpson never sending any written discovery pursuant to Rules 33, 34, or 36, nor did he take any depositions of any fact or medical witnesses, even though the Rule 26 disclosures filed for Boynes by HMB listed 11 fact witnesses and 6 medical providers. Indeed, he never even sent a medical authorization to Malone. **Ex. 1**.

22. On May 23, 2022-Simpson sent his first report to Carey giving an update after Malone's deposition was taken. Simpson suggested that Chubb hire an investigator to do surveillance on Malone as well as to hire multiple medical experts, noting the deadline to produce expert reports was July 15th, less that 60 days away. **Ex. 12.**

23. Chubb never did any surveillance on Malone, nor did it ever authorize Simpson to hire the medical experts he had recommended. **Ex. 1**.

24. After fact discovery was complete, Malone had produced his expert reports and then sent a policy limits demand to Boynes and Island Time, with the demand for the entire limits of Boynes' available insurance coverage expiring on July 1, 2022. **Ex 1**.

25. Mediation was set for June 29, 2022, two days before the demand expired. **Ex 1**.

26. On June 27, 2022, Simpson sent a report to Carey for the upcoming mediation, reminding him it is set for June 29th, and discussing liability and damages. Simpson recommended offering Chubb's policy limits $1,000,000 at mediation. Simpson also stated that if a jury finds liability, the damages could be $10,000,000 (or more). **Ex 13.**

27. Even though Chubb had provided defense counsel for Boynes since September 21, 2021, and had never sent Boynes an ROR, Chubb sent Boynes a denial of coverage

letter on June 28, 2022, specifically referencing Chubb Policy 486, stating that it would not pay for any judgment that might be entered against Boynes because Boynes was supposedly not an Assured under Chubb Policy 486. **Ex 14**.

28. When the broker who placed this policy heard about the denial of coverage letter from Island Time's CEO, he sent an email to Chubb, asking how it could do so. **Ex 15**

29. Chubb subsequently sent a second denial of coverage letter on July 21, 2022, *confirming that Boynes was a named insured under Policy 528*, stating (**Ex 16** at p. 3):

    Both Mr. Boynes and Island Time Watersports Caribbean LLC qualify as Assureds under the policy . . . .

30. However, the July 21st letter then went on to deny coverage, asserting that there was a watercraft exclusion in Policy 528 that excluded coverage for this incident. **Ex 16.**

31. However, Policy 528 expressly states that "this exclusion does not apply to watercraft . . . covered by any marine liability coverage endorsed to this policy." **Ex 4** at p. 2.

32. Chubb's July 21, 2022, letter denying coverage did not mention Endorsement #6 of Policy 528 (**Ex 13**), which added coverage for "Passenger vessel charter and watersports operations", *which moots the watercraft exclusion and provides coverage for this precise incident.* See Endorsement #6 in **Ex 4**).

33. As Boynes noted in ¶ 7 an ¶ 8 of his declaration dated July 28, 2022 (**Ex 17**), he never received an ROR before he received the denial if coverage letter, nor had he ever been informed that there might be any question about me being covered by Island Time's insurance policies, noting that he had completely relied upon the attorneys appointed by the insurance carriers to fully and properly defend him. Boynes repeated this last statement in his deposition as well--that he always believed he was covered for this incident under Island Times' insurance policy. **Ex 18** at 29.

With these facts in mind, a review of the applicable law explains why summary judgment is warranted on Counts I and III of the Amended Complaint.

### III.    CHUBB IS ESTOPPED FROM DENYING COVERAGE

Count I of the Amended Complaint seeks declaratory relief based on whether Chubb can deny coverage to Boynes after retaining counsel for him and defending the case on the merits, when no prior reservation of rights letter ("ROR") was given to Boynes at the outset of the litigation, or at any time before the denial of coverage letter was sent 10 months after Chubb assumed control of his defense to Malone's complaint.

### A. An insurer will be estopped from denying coverage if they defend a case without issuing an ROR

It is "black letter" law that an insurer who fails to send a reservation of rights letter before providing a party with a defense in a case cannot later deny coverage on an issue that was known or could have been known before the defense was provided. This view has been adopted by §15 of the Restatement of the Law of Liability Insurance, which states:

> (1) An insurer may reserve the right to contest coverage for an action before undertaking the defense of the action if it gives timely notice to the insured of any grounds for contesting coverage of which it knows or should know.

As succinctly stated in *Comment b* to this section:

> An insurer that undertakes to provide a defense without providing timely notice to the insured of any ground of any kind for contesting coverage of which it knows or should know **loses the opportunity to contest coverage on that basis.** (Emphasis added).

There is already a case on point in the Virgin Islands. In *Anderson v. National Chiropractic Mutual Insurance Company,* 36 V.I. 47 (V.I. Terr. Ct. 1997) (Cabret, J.), the Superior Court addressed an identical fact pattern where the carrier provided a defense to the insured on the merits without first providing a reservation of rights and then subsequently denied coverage. In granting summary judgment against the carrier, the court held, *id.* at 52-53:

> Although an issue of first impression in the Virgin Islands, this case is controlled by a long established rule that
>
> [A] liability insurer which assumes and conducts the defense of an action brought against the insured with knowledge of facts taking the accident or injury outside the coverage of the policy, and without disclaiming liability or giving notice of a reservation of its right to deny coverage, is thereafter precluded in an action upon the policy from setting up the defense of noncoverage. In other words, the insurer's unconditional defense of an action brought against its insured constitutes waiver of the terms of the policy and an estoppel of the insurer to assert such grounds. (Citations omitted)(footnote omitted).

As *Anderson* went on to point out, *id.*:

> This general rule is limited by the principle that the insurer will not be prevented from denying coverage where it provides timely notice to the insured that it assumes the defense of a claim under a reservation of rights. (Citations omitted).

While *Anderson* also discussed the issue of whether actual prejudice need be shown for this rule to apply, the majority rule holds so that no actual prejudice need be shown, as prejudice is

presumed. See *Comment a* to Restatement §15, *supra* ("Many courts have therefore either adopted a non-rebuttable presumption of prejudice or else determined that prejudice occurs as a matter of law when the insurer defends without reserving its rights.")

However, even if this Court determines that actual prejudice need be shown, summary judgment is still warranted under the facts of this case as a matter of law. In this regard, as discussed in *Anderson,* there were two views regarding this issue—one where courts assumed prejudice and one where prejudice had to be shown. As for the cases that presumed prejudice, *Anderson* held, *supra* at p. 56:

> There is widespread agreement in the case law that an untimely notice of disclaimer creates a presumption of prejudice. See, *Safeco Ins. Co. v. Ellinghouse,* 223 Mont. 239, 725 P.2d 217 (Mont.1986) (prejudice is conclusively presumed where the insured loses its right to control and manage the case by virtue of the insurer's assumption of the defense); *Pendelton v. Pan American Fire and Casualty Co.,* 317 F.2d 96 (10th Cir.1963); and Couch on Insurance 2d, § 51:85 (prejudice to the insured, by virtue of the insurer's assumption of the defense and subsequent denial of liability, conclusively presumed) (citations omitted). (Footnote omitted)

*Anderson* then went on to discuss the cases where prejudice is not presumed, stating, *supra*:

> This approach is not exclusive, however, as other cases have required a showing of actual prejudice on behalf of the insured. *See, Mendel, et al. v. The Home Insurance Co.,* 806 F.Supp. 1206 (W.D.Pa.1992) (applying Pennsylvania law, the District Court refused to apply a strict waiver theory and determined that prejudice is a question of fact); *Hoyt v. St. Paul Fire & Marine Ins. Co.,* 607 F.2d 864 (9th Cir.1979) (actual prejudice caused by insured's reliance on insurer's handling of defense gives rise to estoppel); and *Beckwith Machinery Co. v. Travelers Indem. Co.,* 638 F.Supp. 1179 (W.D.Pa.1986) (insured suffered actual prejudice and, therefore, insurer estopped from disclaiming coverage after insured relied upon it for coverage for 13 months).

However, *Anderson* concluded that it did not need to decide which view to adopt, as Judge Cabret held, *supra* at 58, that actual prejudice occurred in *Anderson* as a matter of law since fact discovery was complete and expert discovery was almost complete before the denial of coverage letter was sent, *identical to the facts in this case.*

In reaching this conclusion, *Anderson* discussed the holding in *Transamerica Ins. Group v. Chubb & Son, Inc.,* 16 Wash. App. 247, 554 P. 2d 1080 (Wash. 1976), where another court barred Chubb from denying coverage based on the identical facts in this case. In

7

*Transamerica*, Chubb had defended the underlying suit for 10 months without issuing a reservation of rights before denying coverage. In finding that Chubb had waived its right to deny coverage due to this passage of time, the Washington State court held that prejudice must be presumed under such circumstances, stating, *id.* at p. 252):

> The course cannot be rerun, no amount of evidence will prove what might have occurred if a different route had been taken. By its own actions, Federal irrevocably fixed the course of events concerning the lawsuit for the first 10 months. Of necessity, this establishes prejudice.

Thus, like *Anderson,* this Court need not decide whether prejudice need be presumed either, as the facts before this Court confirm that Chubb provided a defense for Boynes for 10 months (September 2021 through June 2022) before denying coverage, without ever sending an ROR to him. During this time (1) the deadline for written fact discovery expired and (2) the deadline for taking fact depositions expired. SOF#21. Equally important, *if not even more important than these expired discovery deadlines*, **the denial of coverage came on the eve of mediation, with the policy limits demand set to expire two days later.** SOF##24-27.

In short, actual prejudice can be found as a matter of law in this case--if such a showing is even required before prohibiting an insurer from denying coverage when no reservation of rights letter was sent before the defense of the action was undertaken.

Moreover, if prejudice must be shown and cannot be presumed, so that a showing of prejudice is required, the undisputed facts in this case support such a finding. In this regard, Chubb's adjusters first recognized at the outset that the allegations in the complaint could exceed its policy limits. SOF#9. Its adjusters then oversaw the defense of the underlying litigation, allowing fact discovery to proceed and then conclude without having its designated counsel sending any interrogatories or document requests—not even seeking a medical authorization from Malone. SOF#21. Likewise, no depositions were taken other than the deposition of Malone, that was limited to his damages, as no other fact witnesses or medical providers were deposed despite the known severity of Malone's injuries. SOF#21. Indeed,

8

Chubb did not even follow the advice of its appointed counsel by conducting surveillance or hiring specific experts recommended by him to address certain liability and medical issues. SOF##22-23. When a policy limits demand was received, Chubb waited until 2 days before it expired to deny coverage. SOF#24-27. Clearly Boynes' was extremely prejudiced by Chubb's conduct in defending him prior to its denial of coverage 10 months later.

**B. A *Banks* analysis supports the adoption of this "estoppel doctrine".**

While it is unknown whether this Court should conduct a *Banks* analysis first before deciding to apply this well-established law of estoppel *within the context of finding coverage when an insurer had defended a case without issuing a ROR,* such an analysis would result in this rule being adopted in the Virgin Islands.

In doing this analysis, the court first looks to prior holdings in this jurisdiction and then to holdings elsewhere before determining the best rule for the Virgin Islands. *See, Helman v. Marriott Int'l, Inc.,* Civil No. 2019-36, 2021 U.S. Dist. LEXIS 147316, *6, fn. 4 (D.V.I. Aug. 6, 2021). That *Banks* analysis reveals as follows:

- As for the first *Banks* prong, **every** Virgin Islands case that has addressed this issue has held that this doctrine applies in the Virgin Islands. *See, e.g. Anderson v. National Chiropractic Mutual Insurance Company,* 36 V.I. 47 (V.I. Terr. Ct. 1997); *Anselm v. John-Baptise,* 2011 V.I. LEXIS 116 (V.I. Super. Ct. Feb. 8, 2011); *Amlin Underwriting, Ltd. V. Caribbean Auto Mart of St. Croix, Inc.,* CIV. NO.: 2009/21, 2010 U.S. Dist. LEXIS 102609 (D. V.I. Sept. 28, 2010); *Devon Int'l Corp. v. Reliance Ins. Co.,* Civil No. 2001-201, 2007 U.S. Dist. LEXIS 78672 (D. V.I. Oct. 23, 2007), affirmed (without addressing estoppel issue) at 609 F.3d 214 (3d Cir. 1996).

- As for the second *Banks* prong, only one state, Wisconsin, has not adopted this rule. *See, Maxwell v. Hartford Union High Sch. Dist.,* 814 N.W.2d 484, 498 (Wis. 2012). Every other jurisdiction that has addressed this issue has held that an insurer is estopped from denying coverage where it defends a case without issuing a ROR. *See, e.g., Enoka v. AIG Hawaii Ins. Co.,* 109 Haw. 537, 556–57, 128 P.3d 850, 869–70 (2006), *as corrected* (Feb. 28, 2006); *Transcon. Ins. Co. v. J.L. Manta, Inc.,* 714 N.E.2d 1277, 1281–82 (Ind. Ct. App. 1999); *Potesta v. U.S. Fid. & Guar. Co.,* 202 W. Va. 308, 321-322, 504 S.E.2d 135, 148-149 (1998); *AIG Hawai'i Ins. Co. v. Smith,* 78 Hawai'i 174, 189, 891 P.2d 261, 267 (1995); *Turner Liquidating Co. v. St. Paul Surplus Lines Ins. Co.,* 93 Ohio App. 3d 292, 299, 638 N.E.2d 174, 179 (1994); *Pacific Indem. Co. v. Acel Delivery Serv., Inc.,* 485 F.2d 1169, 1173 (5th Cir.1973); *Gibraltar Insurance Co. v. Varkalis,* 46 Ill.2d 481, 263 N.E.2d 823 (1970).

- As for the third prong of *Banks*, the application of this estoppel doctrine in this case is just a step towards Malone obtaining compensation as a result of his tort claim against Boynes. With this comment in mind, the V.I. Supreme Court has held that in adopting the best rule for the Virgin Islands that tort law is designed to compensate injured parties. *See, e.g, Walters v Walters,* 2014 WL 1681319 at *5 (V.I. 2014) (in adopting the "soundest rule," a court must be mindful that "Tort law serves two fundamental purposes: 'deterrence and compensation'"). In short, it is clear that this prong strongly favors adopting the long standing holding set forth in *Anderson* as the best rule for the Virgin Islands.

In conclusion, it is "black letter" law that if an insurer conducts an insured's defense without timely reserving its right to deny coverage, it cannot later disclaim coverage based on a policy defense that existed at the time it assumed the insured's defense.

## C. Boynes has standing to raise this "estoppel doctrine"

One of Chubb's legal experts has suggested that Boynes does not have standing to raise this estoppel issue since he is allegedly not an "insured" under policy 486. While Chubb denied coverage to Boynes on Policy 486 because they claim he was not a named insured, which is disputed, even if that is correct, it does not bar the application of this estoppel doctrine in this case for two separate reasons.

**First,** this point is moot, as there is no dispute that Boynes was a named Insured under Policy 528 (SOF#4), which Chubb has conceded, as noted. SOF#29. In this regard, Policy 528 was issued at the same time as Policy 486 (SOF#5), so Boynes has always been a named Insured of Chubb at all times relative hereto. Indeed, Island Time's attorney, Marinelli, stated that Policy 528 was the correct policy before an appearance was made for Boynes in the underlying case. See SOF ##5-6. Likewise, the lawyer for HMB appointed by Chubb to represent both Island Time and Boynes, Doniger, made it clear on January 4, 2022, that Chubb was looking at these "policies," which he termed as "a bit to go through" in his email transmitting the certificate of insurance that referenced both policies. See SOF #13. Finally, Chubb's June 28, 2022, denial of coverage letter referenced all "Policies" issued by Chubb, which would include Policy 529, stating at the end of that letter (SOF#27):

10

> We reserve the right to assert additional response to disclaim coverage **upon the Policies terms and conditions . . . The Policies, in their entirety, are incorporated herein by reference as if they had been stated in full.**
>
> **Chubb also reserves all rights under the terms, conditions, limitations, endorsements, and exclusions of any and all insurance policies issued by Chubb** on behalf of Red Hospitality. (Emphasis added).

Thus, regardless of whether this Court finds Boynes was also an insured under Policy 486, the estoppel argument would apply to both policies based on the fact that Chubb defended Boynes, a named insured under at least Policy 528, for over 10 months without issuing a reservation of rights under either policy to him. Thus, whether Boynes is a named insured under policy 486 need not be addressed before applying this "estoppel doctrine"—that an insurer cannot deny coverage to an insured if it defends a case for 10 months without sending an ROR letter---as Boynes was an insured at all times since August 14, 2021, when Chubb issued Policy 528.

**Second,** and equally important, even if Policy 528 did not exist, it would be counter to every well-known equitable principle for Chubb to (1) decide that Boynes was covered at the outset of a claim, as Chubb did (SOF#12), (2) then provide coverage for him over the next 10 months before denying coverage (SOF#27), but (3) now argue that whatever happened in the interim created no rights for Boynes since he was never an insured under the policy. The easiest equitable principle to apply is the doctrine of equitable estoppel to prevent Chubb from trying to extricate itself from its own misconduct at Boynes' expense.

The V.I. Supreme Court did its own *Banks* analysis and adopted this doctrine in *Browne v. Stanley*, 66 V.I. 328, 333–35 (2017), holding:

> In light of such widespread uniformity between our courts and those in other jurisdictions, we have little difficulty in adopting this application of equitable estoppel as the soundest rule for the Virgin Islands because it promotes equity and justice by preventing one party from taking unfair advantage of another. *See Major League Baseball v. Morsani*, 790 So. 2d 1071, 1078 (Fla. 2001) ("A prime purpose of the doctrine of equitable estoppel ... is to prevent a party from profiting from his or her wrongdoing."); . . . *Boland v. Saint Luke's Health Sys., Inc.*, 471 S.W.3d 703, 717 (Mo. 2015) ("The purpose of the doctrine of equitable estoppel is to prevent a party from taking inequitable advantage of a situation he or she has caused." (citation and internal quotation marks omitted)).

11

The V.I. Supreme Court then held, *id.*:

> In the Virgin Islands, equitable estoppel requires an asserting party to demonstrate that (1) the party to be estopped made a material misrepresentation (2) that induced reasonable reliance by the asserting party and (3) resulted in the asserting party's detriment.

In reaching this decision, the V.I. Supreme Court further held, *id.* at 336:

> The existence of reasonable reliance and detriment "depends upon the facts of each particular case." *Roberts Constr. Co. v. Vondriska*, 547 P.2d 1171, 1176 (Wyo. 1976) (citing 28 AM. JUR. 2d *Estoppel & Waiver* § 35); *accord Brown v. Chiang*, 132 Cal. Rptr. 3d 48, 68 (Cal. Ct. App. 2011) **(noting that "whether reliance on a false statement or conduct is reasonable is a question of fact")**. (Emphasis added).

Aside from the direct quote from the California case, *Brown, supra,* that held that reliance can be based on a statement **or conduct**, the V.I. Supreme Court also cited 28 Am. Jur. 2d *Estoppel and Waiver* § 35, which states that "Equitable estoppel focuses on a party's detrimental reliance on another party's conduct."

Applying this equitable doctrine to the facts of this case, Boynes stated under oath that he believed he was covered by Island Times' insurance (SOF#33), which Chubb's conduct certainly confirmed was reasonable for Boynes to rely upon, as they appointed counsel to defend him from the outset of the case. SOF#8. Moreover, once Chubb declared him to be an "assured" under Policy 486 and assumed his defense, Policy 486 required him to cooperate with Chubb in defending the case, which he did in conjunction with Chubb's selected counsel. SOF#33. In short, Chubb's conduct certainly led Boynes to reasonably rely on the fact that he had insurance coverage.

As for the resulting detriment, it was certainly substantial for the following reasons:

- While Chubb's adjusters recognized immediately in evaluating the claim against Boynes that the allegations in the complaint could exceed its policy limits (SOF#9), its adjusters totally neglected overseeing the defense of the underlying litigation, allowing fact discovery to proceed and then conclude without having its designated counsel sending any interrogatories or document requests—or even seeking a medical authorization from Malone. SOF #21.

12

- Likewise, no depositions were taken other than the deposition of Malone, that was limited to his damages, as no other fact witnesses or medical providers were deposed despite the known severity of Malone's injuries. SOF#21.

- Indeed, Chubb did not even follow the advice of its appointed counsel by conducting surveillance or hiring specific experts recommended by him to address certain liability and medical issues. SOF#23.

- When a policy limits demand was received, Chubb waited until 2 days before it expired to deny coverage. Clearly Boynes' was prejudiced by Chubb's conduct in defending him prior to its denial of coverage 10 months later. SOF#24-27.

Thus, the doctrine of equitable estoppel also bars Chubb at this juncture from asserting that Boynes was not an insured under Policy 486 *for the purpose of allowing him to have standing as an insured in raising the other estoppel argument raised in this section*---that Chubb's failure to send him an ROR for over ten months bars Chubb from now denying coverage under the policy. [3]

As such, even if Malone is not a named "insured" under Policy 486, he is entitled under both the express language of Policy 528 naming him as an insured, which Chubb concedes, as well as under the doctrine of equitable estoppel, to raise the issue of whether Chubb is estopped from denying him coverage since it did not issue him an ROR for over 10 months before denying coverage to him. Thus, Malone, as Boyne's assignee is entitled to summary judgment as to Count I of the Amended Complaint that Chubb's denial of coverage was untimely so that Chubb is estopped from denying coverage under both Policies 486 and 528.

## IV.    Count III-Coverage under Chubb Policy N10694528

Chubb Policy N10694528 also provides coverage to Boynes for the claims asserted against him by Malone. Pursuant to Endorsement #20, there is no dispute that this policy insures Island Time, Boynes' employer, for the time period when the underlying incident occurred on April 17, 2021. Moreover, the policy, defines the Named Assured on page 12, Section III, subsection G, as including employees "while acting within the scope of their

---

[3] Indeed, if this equitable doctrine did not apply, others would, such as the doctrine of unclean hands.

13

duties" (SOF#4), which Chubb has conceded included Boynes' conduct at the time of the incident. See SOF#29.

While the language in the section of policy regarding "Policy Exclusions" includes a subsection E that excludes coverage for injuries incurred while operating a "watercraft", as noted in Chubb's denial of coverage letter, that clause goes on to explain when it does not apply, stating in full as follows (SOF#4):

This insurance does not apply to:

. . . .

E. "bodily injury" or "property damage" arising out of the ownership, maintenance, operation, use, "loading or unloading" of:

. . . .

2. any other watercraft operated by any person in the course of his employment by any "Assured"; **but this exclusion does not apply to watercraft . . . covered by any marine liability coverage endorsed to this policy**; (Emphasis added).

In short, this exclusion clearly states that it does not apply if there is an endorsement to the policy that provides "marine liability coverage."

As it relates to this case, "marine liability coverage" is then added back to the policy in Endorsement #6 to Policy 528, which expressly states (SOF#4):

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**
**This Endorsement modifies insurance provided under the following:**

**Schedule**

**Description of Designated Operation(s):**

**Passenger vessel charter and watersports operations;** excluding parasailing and excursion tour operators liability as indicated elsewhere herein.

. . . .

Notwithstanding anything to the contrary contained herein, **it is hereby agreed and understood that their coverage under the policy shall only apply arising out of or related to the ongoing operations described in the Schedule of this endorsement,** whether such operations are conducted by you or on your behalf or whether the operations are conducted for yourself or for others. (Emphasis added)

In short, the clear language in Endorsement #6 extends coverage to claim "arising out of" the "passenger vessel charter" that Boynes was conducting on April 17, 2021, when the Plaintiff

14

was injured. Indeed, **the language excluding parasailing added in Endorsement # 6 would not have been needed if the general watersports exclusion were still valid.[4]**

In summary, there is no dispute that Chubb Policy N10694528 also expressly provides coverage to Boynes for the claims asserted against him by Malone. As such, Malone is entitled to summary judgment on Count III for this reason as well.

## V.    Summary

For the reasons set forth herein, it is respectfully submitted that summary judgment should be granted as to each Counts I and III of the Amended Complaint.

Dated: March 18, 2024

*/s/ Joel H. Holt*
Joel H. Holt, VI Bar No. 6
Law Office of Joel H. Holt, Esq. P.C.
2132 Company Street
Christiansted, VI 00820
T: (340) 773-8709/F: (340) 773-8677
holtvi@aol.com / joelholtpc@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that this document was served this 18th day of March, 2024, by this Court's ECF system as well as by email on:

Robert J. Kuczynski, Esq., VI Bar No. 1260
Beckstedt & Kuczynski LLP
2162 Church Street
Christiansted, VI 00820
robb@beckstedtlaw.com

John David Dickenson, Esq.
Cozen O'Connor
1081 N. Military Trail, Suite 200
Boca Raton, FL 33431
jdickenson@cozen.com
sbrier@cozen.com

---

[4] Indeed, as noted in *Devcon Int'l Corp. v. Reliance Ins. Co.*, 609 F.3d 214, 218 (3d Cir. 2010) "Exclusions from coverage are strictly construed against the insurer.' Likewise, it is also "black letter" insurance law that the language in an endorsement prevails over the language in the general policy. *See, e.g., St. Paul Fire & Marine Ins. Co. v. U.S. Fire Ins. Co.*, 655 F.2d 521, 524 (3d Cir. 1981)(" If there is a conflict between the terms of the endorsement and those in the body of the main policy, then the endorsement prevails, particularly when it favors the insured.")

Tiffany Bustamante O'Quinn, Esq.
Cozen O'Connor
200 S. Biscayne Boulevard, Suite 3000
Miami, FL 33131
toquinn@cozen.com

*/s/ Joel H. Holt*